UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 2:15CR72-PPS/APR |
| ) | |
| DARRICK VALLODOLID, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Defendant Darrick Vallodolid previously moved to strike the Government's notice of expert witnesses. [DE 994.] The Government didn't respond. Instead, it amended its disclosure. [DE 1013.] The defendant never moved to strike the amended notice, although it did file a reply after the Government amended its notice. Recently, the defendant filed another motion asking that I set some deadlines and also requesting that I rule on the original motion to strike. [DE 1336.] I will take up the request to set deadlines in a different order. This order will address only the Motion to Strike the Government's Expert Notice. In my view, the Government has met its obligations under Federal Rule of Criminal Procedure 16(a)(1)(G).

### Background

Darrick Vallodolid is charged with conspiracy to participate in racketeering activity and conspiracy to possess with intent to distribute illegal substances. As one of the overt acts in the conspiracy, he is alleged to have committed homicide. [DE 1167 at 17.] Pursuant to Rule 16(a)(1)(G), Vallodolid requested that the Government provide "a written summary

of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief." [DE 429 at 1.] On August 14, 2017, the Government identified two expert witnesses, a medical examiner and a firearms expert. [DE 963.] Vallodolid responded by filing a motion to strike arguing that the disclosures were not sufficient under Rule 16 because they failed to provide the required information, including the witnesses' opinions, bases and reasons for those opinions, and the witnesses' qualifications. In response, the Government filed an amended notice of expert witnesses. [DE 1013.]

In its amended notice of expert witnesses, the Government disclosed two expert witnesses: Dr. Mitra Kalelkar, a retired Deputy Chief Medical Examiner, and Jay Cruz, a firearms expert. Dr. Kalelkar will testify as to the autopsy results for two men, one of whom was allegedly killed by Vallodolid. She did not perform the initial autopsies, but she has reviewed those autopsy reports and photos and will testify consistently with the medical examiners who did perform them. The Government's second witness, Jay Cruz, is a Detective of the Lake County Police Department. He will testify as to bullets recovered during the autopsy of one of the murder victims and to the type of firearm from which the bullets allegedly were fired. [DE 1012, 1013.]

## Discussion

Federal Rule of Criminal Procedure 16 requires the Government to make certain pretrial disclosures regarding its expert witnesses. Upon a defendant's request, the Government must disclose the expert witnesses it intends to use in its case-in-chief at trial,

2

as well as summaries of the experts' expected testimony. Fed. R. Crim. P. 16(a)(1)(G). The summary must "describe the witness's opinions, the bases and reasons for those opinions, and the witness' qualifications." *Id.*; *United States v. Yoon*, 128 F.3d 515, 526 (7th Cir. 1997). The purpose of this provision is to "minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." *See* Fed. R. Crim. P. 16(a)(1)(G) advisory committee note.

Vallodolid does not object to the qualifications of either witness, but he argues that the Government, even through its amended notice, has failed to provide sufficient information as required by Rule 16(a)(1)(G).

With respect to Dr. Kalelkar, Vallodolid argues that the Government has not disclosed what Dr. Kalelkar's actual opinions will be. The Government says that she will "testify consistently with Dr. Crown's report regarding the autopsy of Victor Lusinski, which has been provided in discovery." [DE 1012 at 3.] But the Government's disclosure also contains observations and opinions that Dr. Kalelkar will testify to. These include details concerning the gunshot wound suffered by the victim Victor Lusinski, including where the bullet entered the victim, the measurement and location of the wound, details concerning the bullet and where it was recovered, the trajectory of the wound entrance, the fact that examination of the wound revealed close-range firing, and the consequences to the victim of the gunshot. [DE 1013 at 5.] Vallodolid claims that these are "observations"

3

that anyone with functioning eyesight and a measuring tape could testify to. That's a bit of a stretch.

Although they are framed in terms of "observations", and not expressly labeled "this is my opinion," I won't elevate form over substance. Dr. Kalelkar's opinion is that, consistent with the autopsy report, the victim was shot in a precise spot in his head at close range from the front. As to the other victim, Travis Nash, Dr. Kalelkar will testify that the victim was shot in the left arm, and the bullet passed through the victim's arm and chest wall, fracturing his rib and perforating his lung. She will also testify as to why this gunshot wound was fatal and that the manner of death was homicide. This level of detail clearly articulates her opinions in this case.

Vallodolid also takes issue with the basis of Dr. Kalelkar's opinion. It is true that the disclosure says only that the basis for her opinions are "her medical training, her experience as a medical examiner, and her examination of autopsy reports, autopsy photos and other medical photos of the two homicide victims." [DE 1013 at 3.] But I'm not sure there is much more to say about it. In other words, what more would a forensic pathologist opining on the cause of death rely upon other than her medical training, her experience as a medical examiner, the autopsy itself and photos of both the victim and the autopsy? According to the Government, the autopsy report, on which Dr. Kalelkar bases her opinions, has been produced in discovery. I assume that the photos on which she bases her opinion, as well as Dr. Kalelkar's curriculum vitae, have also been produced to the

4

defendant. If they have not been produced then the Government is ordered to do so forthwith.

Vallodolid also challenges the Government's disclosure of its second expert, Jay Cruz, a firearms expert. Vallodolid makes the same challenge to Cruz's observations – that they are not actual opinions. But as with Dr. Kalelkar, the "observations" of Mr. Cruz are most sensibly read as his conclusions and opinions. For example, the Government disclosed that Cruz will testify that the bullet recovered from the autopsy of Victor Lusinski was fired from a specific family of firearms. That strikes me as an opinion, not merely an "observation." He will also testify about the difference between .22 caliber bullets and .25 caliber bullets and why they cannot be fired from the same type of weapon. [DE 1013 at 6-7.] This disclosure as to his opinions is sufficient.

Vallodolid also challenges the bases for Cruz's opinions. The Government tells me that Cruz's opinions are "based on training in police academies and other training as a firearms expert, his on the job experience as a Firearm and Tool Mark Examiner, and his examination in the firearms lab of the evidence submitted in this case." [DE 1013 at 7.] Cruz's opinions strike me as rudimentary; they merely relate to the caliber of the bullets recovered from the victims and what kind of weapons they are *capable* of being fired from. He is not testifying – as I understand it – that a particular bullet was fired from a particular weapon. If this assumption is incorrect then the Government must amend its notice again. It will be given 7 days to do so. If my reading of Cruz's opinion is accurate, then the Government need not do anything further. As for the bases for Cruz's straight-froward

opinions, he is relying on his analysis of the evidence itself (i.e. the bullets), his background, training and his vast experience as a firearms examiner at the Lake County Sheriff's Department. Nothing more needs to be said.

**ACCORDINGLY:**

Defendant Derrick Vallodolid's Motion to Strike [DE 994] is **DENIED except** as explained above. If it hasn't already done so, the photos relied upon by Dr. Kalelkar must be produced forthwith. Consistent with what is explained above, the Government must supplement Mr. Cruz's opinion only to the extent it is necessary as discussed above.

ENTERED: February 9, 2018

/s/   Philip P. Simon
Judge
United States District Court